| | |
|---|---|
| STATE OF NORTH CAROLINA | UNITED STATES DISTRICT COURT<br>ASHEVILLE DIVISION |
| COUNTY OF MADISON | NORTH CAROLINA WESTERN DISTRICT |
| LAWRENCE E. GULLUM | 1:21-cv-245 |
| Plaintiff | 28 USC 1332 |

VS.

ENDEAVOR INFRASTRUCTURE
HOLDINGS, LLC,
ANTHONY BUFFA, DANE JAMES
ENDEAVOR CAPITAL MANAGEMENT
TO EIH: anthonybuffa@gmail.com
TO JAMES: Danejames@me.com

Defendants

**COMPLAINT**
Summary Judgement
Breach of Contract
Injunction & Garnishment

FILED
ASHEVILLE, N.C.
SEP 14 2021
U.S. DISTRICT COURT
W. DIST. OF N.C.

NOW COMES the Plaintiff in these matters complaining of the Defendants and alleges and says as follows:

1. The Defendants are a Delaware limited liability company, a North Carolina corporation and (2) individuals: Buffa resides in Indiana and James resides in Deerfield, IL. All of whom are doing business in North Carolina.

2. The amount in controversy in this action exceeds $100,000.

3. This court has jurisdiction under 28 USC 1332. Venue is proper under 28 USC 1391 and NC General Statute 1-76.

4. Defendants mislead Plaintiff concerning their ability to satisfy their contractual obligations for timely payment of (3) promissory notes; Defendants have repeatedly defaulted on these notes, and have repeatedly breached all Addendums and Extensions to the July, 2020 Settlement Agreement and Consent Agreement.

## FACTS

5. Plaintiff is the founder of MCC Development, Inc. ("MCC") - owning 90% of the outstanding shares - and agreed in December, 2017 to an offer from the Defendants to purchase his shares in the business with a $1.2M enterprise value. Payment for Gullum's shares consisted of cash down payment at closing and (2) Promissory Notes in the sum of $90,000 and $348,000 were offered as an inducement for Plaintiff to accept the Shareholder Agreement and Share Purchase Agreements - an integral part of a single transaction - as provided for in Section 4 of the Share Purchase Agreement. (Exhibits A and B).

6. The purchaser was Endeavor Infrastructure Holdings, LLC which is controlled by Buffa and James who are in a 50/50 partnership.

7. The executed share purchase documents, promissory notes, buyer's personal guaranties, and interest rates were prepared by Counsel for Defendants.

8. The Installment Promissory Notes (Exhibits C and D) are to be paid in monthly installments and included explicit personal guaranties from Buffa and James (Exhibit E) which stipulate that each Note is a "continuing, unconditional, and irrevocable Guaranty" and the obligations of the Debtors is to guaranty full and timely payment of all amounts due.

9. The Share Purchase Agreement provides in part as Remedy to Seller that upon the occurrence of Default, Seller shall be entitled to all remedies available at law without limitation and "the Right to Seek Damages for a Breach of this Agreement". The Defendant's explicit guaranties stipulate that Guarantors shall also pay to Creditor reasonable attorney's fees and all costs and other expenses incurred by it in enforcing the obligations of Debtors under the Promissory Note or the obligation of Guarantor under this guaranty"

10. The Shareholder Agreement stipulates that the Promissory Notes offered to Gullum "are a material inducement" and provides as Rights and Remedies that "the breaching party shall pay to the non-breaching stakeholders the liquidated sum of $100,000 as liquidated damages ... and not as penalty".

11. Prior to the sale in 2017, Buffa submitted his professional resume and background information (Exhibit F) to Plaintiff and his business broker as evidence of his credit worthiness and ability to perform under the purchase Agreement. James falsely claimed to have $300,000 to invest.

12. After agreeing to the sale, Gullum discovered that Buffa failed to disclose (2) Default Judgements on Promissory Notes totaling > $465,000 in 2006 and 2013 (Exhibit F) that were later discharged in Buffa's Chapter 13 personal bankruptcy; and was threatened with threat of contempt of court for his efforts to dodge a charging order (Exhibit G). These facts were not revealed in the personal history provided by Buffa but instead his resume makes references to an "acute illness" to conceal the court action.

13. These concealments and misrepresentations were reasonably calculated to deceive and induce Plaintiff to accept their personal guaranties and installment payments for the purchase of his stock.

14. An examination of MCC payroll records revealed that Defendants benefited from the Share Purchase Agreement as Buffa and James have received > $500,000 in salary and bonuses from January, 2018 through the date of this action, but continue to evade their payment obligations.

15. The Installment Promissory Note in the sum of $348,000 contains the provision: "If MCC Development, Inc. pays a profit distribution or dividends to its shareholders during the term of this note that the Debtors shall be obligated to pay fifty percent (50%) of those distributions or dividends toward the principal on this note.

16. Defendants and MCC's Board of Directors authorized a shareholder distribution on January 12, 2020 in the sum of $68,000 with 50% of this distribution paid to Plaintiff as payment on the note as required.

17. On April 09, 2019 a second shareholder distribution in the sum of $64,000 was authorized with Buffa and James each receiving Consideration. The Defendants breached the terms of the promissory note as 50% of the distribution was not paid to Plaintiff. Liquidated damages in the amount of $100,000 is being sought as remedy for the breach.

18. On April, 10, 2019, Defendants mislead Plaintiff as to their wherewithal to make the time payments when Buffa advised Plaintiff that his 5% equity position in "Insurent" was being sold from which he would receive roughly $1.7 million to make the payments. Instead, Defendants failed to make the payments as promised.

19. After failing to consummate a mediated settlement in March of 2020, the parties executed a Settlement Agreement and Consent Agreement (Exhibit H) in Madison County on July 06, 2020 – to mitigate the legal costs - after repeated missed payments and default notices. Defendants resumed the installment payments in December, 2020 while Plaintiff has abided by the Consent Agreement.

20. Defendants breached the Consent Agreement and their collective payment obligations (and personal guaranty) on the notes beginning with their Default on the June 10, 2021 installment payment against the Note executed on July 15, 2020 (Exhibit I) in Marshall, NC. This Note includes a "call-in" provision that stipulates Lender/Creditor may declare the remainder of the principal sum ($107,666.63) at once due and payable and claim $16,150 in attorney's fees (15% of principal balance) as remedy for this collection action.

21. Plaintiff notified Defendants of the default on June 10, 2021, and denied their request for yet another extension and addendum based on the continued false and misleading statements concerning payment.

22. Defendants violated the Settlement and Consent Agreements a second time with their Default on the installment payments due on July 10, and August 10, 2021 – both were an integral part of the Addendum and Extension to the $348,000 Note (Exhibit J) – signed by both parties on 12/18/2020.

23. Defendants were notified of Plaintiff's allegations of Default on the notes and violations of the Consent Agreement on 8/11/2021 via electronic mail. (Exhibit K).

24. Plaintiff's (Exhibit L) contains a spreadsheet itemizing the payments received from Defendants and the balance of 146,179 (P&I) that remains in default.

25. Plaintiff's (Exhibit M) contains sworn, notarized affidavits attesting to the facts contained herein.

26. Plaintiff and Defendant have previously exchanged request for interrogatories, discovery and production of documents pursuant to Rules 26-37 of the North Carolina Rules and Civil Procedure.

27. Plaintiff is seeking Remedy in the form of liquidated damages as stipulated in the Share Purchase and Shareholder Agreements resulting from Defendant's breaches and material omissions.

28. Plaintiff is seeking the collection of attorney's fees and the costs of this Action under NCGS 6-21.2 and NCGS 75-1.1 for Unfair, Deceptive Trade Practices.

## FIRST CAUSE OF ACTION – DECEPTIVE TRADE PRACTICES/FRAUD IN INDUCEMENT

29. Defendants violated North Carolina's Unfair and Deceptive Trade Practices Act (NCGS 75-1.1) with their failure to disclose several material facts – including the scope of Buffa's summary judgement, charging order and default judgments against him involving financial misconduct – and James' misleading statement regarding the funds he had with which to honor the promissory notes.

30. The resume and background information provided by Buffa was designed to demonstrate a clear intention to show success and he clearly failed to disclose the judgment in 2006 on a Fifth Third Bank loan for $300,000; a charging order with threat of contempt on April 30, 2009 for $180,000; and a judgment to AXA Investment Managers 2012 for $1,205,216.

31. The concealment of these material facts (NCGS 97-88.2) and misrepresentations by Buffa and James concerning their financial wherewithal were made with the intent to deceive and induce Plaintiff to accept the installment payments with their personal guaranties for the purchase of Plaintiff's stock.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT

32. The allegations of paragraphs 1-22 are realleged and incorporated herein by reference.

33. The failure to pay when due combined with repeated Defaults on the promissory notes constitutes a breach of contract, and the consequence of the missed payments represents financial harm to Plaintiff with Remedy being sought as prescribed in section 6 of the Shareholder Agreement.

34. As the defaults and breaches go to the heart of the Defendant's personal guaranties for payment, Plaintiff is entitled to recover liquidated damages in the sum of $200,000 in accordance with the Share Purchase Agreement as Remedy for the violations.

35. That the cost of this action be taxed to the Defendants along with reasonable attorney's fees per the contract and NC law.

## THIRD CAUSE OF ACTION – INJUNCTION AND GARNISHMENT

36. The allegations contained above are realleged and incorporated herein by reference.

37. Defendants continue to exercise control of MCC and EIH bank accounts - making salary and bonus payments to employees, directors and agents, consultants, and creditors for their benefit - while willfully denying payment to Plaintiff in violation of all executed agreements, addendums, and settlement accords.

38. Plaintiff's only adequate remedy is to seek injunctive relief from the Court to enforce compliance with the Share Purchase Agreement and personal guaranties; and approve the entry of garnishment order to enforce recovery and payment of all amounts due per the contracts and NC law.

WHEREFORE, Plaintiff prays the Court:

   a. Decree a preliminary and permanent Injunction as remedy to the Plaintiff and to enforce the Defendant's resumption of note payments and compliance with their personal guaranties.

   b. That Plaintiff be entitled to recover liquidated damages in the sum of $200,000 as remedy for the breach of contract and Defendant's continuing default on the promissory notes as provided for by the contract and NC and Indiana law.

   c. That Plaintiff be granted an injunction to enforce his rights to payment; and the Court enter a garnishment order directing Messrs. Buffa and James, EIH and/or MCC to remit $7,000 monthly to Plaintiff in accordance with the Addendum and Extension to the Promissory Note and restrain the Defendants from releasing any funds directly or indirectly to Endeavor Infrastructure Holdings, LLC, Endeavor Capital Management, LLC, and any of MCC's employees, agents, officers, shareholders, subcontractors, directors, consultants, and creditors until all debts owing to Plaintiff ($38,511.77) have been paid in full in accordance with the contract terms and personal guaranties for payment.

   d. That the Court enter a motion for a summary judgment in the Plaintiff's favor to enforce the "Call-in" provision of the Promissory Note executed on July 15, 2020; and order the Defendants to remit the entire principal amount of $107,666.63 that is now due and payable to Plaintiff.

   e. That Defendants be ordered to compensate Plaintiff for the cost of this legal action and associated costs incurred for the enforcement of the contract and promissory notes in accordance with NCGS 6-21.2, Indiana law and the contract, including the Defendant's personal guaranties for payment.

   f. For such other relief that the Court deems just and proper without limitation.

This, the ___14th___ day of September, 2021.

Lawrence E. Gullum

Pro Se Plaintiff

410 Horse Knob Drive

Marshall, NC 28753

PH: 847-220-1664