**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-245-MOC-WCM**

| | |
|---|---|
| **LAWRENCE E. GULLUM,** )<br> )<br> )<br>Plaintiff, pro se, )<br> )<br>vs. )<br> )<br> )<br>**ENDEAVOR INFRASTRUCTURE HOLDINGS,** )<br>**LLC, et al.,** )<br> )<br> )<br> )<br>Defendants. ) | **ORDER** |

**THIS MATTER** is before the Court on Motions to Dismiss for Lack of Personal Jurisdiction by Defendants Dane James, Anthony Buffa, and Endeavor Infrastructure Holdings, LLC (hereinafter "EIH") (Doc. Nos. 5, 8). For the following reasons, the motions are **DENIED**.

## I.   BACKGROUND

Plaintiff, proceeding pro se, initiated this action by filing his hand-delivered complaint on September 14, 2021. (Doc. No. 1). Plaintiff is a resident of Madison County, North Carolina, and the founder and former majority owner of MCC Development, Inc. (hereinafter "MCC"). Defendants are two individuals, Anthony Buffa and Dane James, who recently purchased Plaintiff's 90% stake in MCC through their jointly owned partnership EIH, also named as a Defendant. (Id. at 1–3). Defendant Buffa is an Indiana resident, Defendant James is an Illinois Resident, and EIH is a Delaware limited liability company. (Doc. No. 8 at 1; Doc. No. 9 at 1–2).

In his complaint, Plaintiff describes his business transaction with Defendants. (Id.). Specifically, Plaintiff asserts that he agreed to sell his 90% stake in the company to Defendants in December of 2017. (Id. at 1). He alleges that the "purchaser was Endeavor Infrastructure Holdings, LLC, which is controlled by Buffa and James, who are in a 50/50 partnership." (Id.). He represents that these shares had an enterprise value of $1.2 million. (Id.). In consideration for these shares, Plaintiff received "payment at closing and Promissory Notes in the sum of $90,000 and $348,000," which included personal guarantees from Buffa and James. (Id.).

According to the complaint, Plaintiff subsequently discovered that Defendants had misled him as to numerous aspects of their financial position and, by extension, the likelihood of being able to satisfy their obligations under the promissory notes, for instance by "falsely claim[ing] to have $300,000 to invest" and "fail[ing] to disclose" debts discharged by Defendant Buffa in bankruptcy. (Id. at 2). Plaintiff argues that "these concealments and misrepresentations were reasonably calculated to deceive and induce Plaintiff to accept their personal guaranties and installment payments for the purchase of his stock." (Id.).

Plaintiff asserts that Defendants then breached the terms of the promissory note agreement, that the parties disputed the matter and arrived at a Settlement Agreement and Consent Agreement in Madison County, but that Defendants then violated this agreement as well. (Id.) Plaintiff now brings suit for damages under three separate causes of action: "Deceptive Trade Practices/Fraud in the Inducement," "Breach of Contract," and "Injunction and Garnishment." (Id. at 3–4).

Defendants have responded with motions to dismiss this suit for lack of personal jurisdiction. (Doc. Nos. 5, 8). The Court must determine if it has jurisdiction before it can reach the merits in this matter. The Court held a hearing on the motions on December 16, 2021.

## II. STANDARD OF REVIEW

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a prima facie case of jurisdiction. Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). The standard of review is by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

The court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction. Universal Leather, 773 F.3d at 560; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ("[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."). The court must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction. Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).

Finally, where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally. Brown v. Charlotte Rentals LLC, No. 3:15-cv-0043-FDW-DCK, 2015 WL 4557368, at *2 (W.D.N.C. July 28, 2015) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.

1978)). At the same time, however, the Court should not "assume the role of advocate for the pro se plaintiff." Gordon, 574 F.2d at 1151 (quotation omitted).

### III. DISCUSSION

As Defendants correctly note, the Court is only permitted to exercise jurisdiction over non-resident Defendants in circumstances permitted by the North Carolina long arm statute and only to the extent that such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. See Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Mylan Labs, Inc. v. Akzo, 2 F.3d 56, 62 (4th Cir. 1993). The exercise of personal jurisdiction over a nonresident defendant is proper when (1) there is a basis for jurisdiction under North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction complies with due process. Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011). Courts construe North Carolina's long-arm statute to be coextensive with due process, such that the two-part test collapses into the single inquiry of "whether the non-resident defendant has such 'minimum contacts' with the forum state that exercising jurisdiction over it does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be exercised specifically or generally. In this case, it is clear that Defendants are not subject to general personal jurisdiction. As Defendants point out, they do

-4-

not reside in North Carolina, nor do they have continuous or systematic contacts with North Carolina. (Doc. No. 12 at 3–4; Doc. No. 13 at 3–4). Thus, Defendants are not "essentially at home" in North Carolina for purposes of general personal jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945)).

The Court next addresses whether it may assert specific jurisdiction over Defendants. In determining whether specific jurisdiction exists, courts consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002) (internal quotations omitted). To establish specific jurisdiction, the plaintiff must show "a sufficient nexus between [the] defendants' contact with the forum state and the nature of the claims asserted." WLD, LLC v. Watkins, 454 F. Supp. 2d 426, 432 (M.D.N.C. 2006). A defendant has purposefully availed herself of the privilege of conducting business in the forum state "[i]f the defendant has created a 'substantial connection' to the forum." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

In this case, the Court finds that Defendants purposefully availed themselves of the benefits of conducting business in North Carolina. As Plaintiff asserts and Defendants concede, Defendants visited North Carolina on three or four occasions, including for a multi-day "kickoff"

meeting. Defendants worked with a business broker in Charlotte, North Carolina to identify potential business acquisition targets, and the broker helped them identify MCC, a North Carolina company, as a target. Defendants visited North Carolina to conduct due diligence and meet with Plaintiff. They then executed an agreement involving hundreds of thousands of dollars, with Plaintiff transferring 90% ownership of MCC. After acquiring MCC, Defendants played an extensive role in managing it, conducted business with North Carolina banks and accounting firms, and approached US Chemical Storage, a Boone, North Carolina subcontractor, with confidential information. (See Doc. Nos. 14, 14-2). Defendants also settled a previous lawsuit filed in this District and participated in court-ordered mediation of that lawsuit in North Carolina. However, Defendants note that they executed this agreement in Illinois. (Doc. No. 12 at 7; Doc. No. 13 at 7).

In sum, Defendants worked with a North Carolina business broker to acquire a North Carolina business in a large, complicated, and ongoing financial transaction with a North Carolina resident, played a significant role in managing that North Carolina business including by doing business with other North Carolina businesses, and came to North Carolina to mediate a dispute regarding the transaction. The Court finds that these multiple, significant, and frequent contacts constituted "purposeful availment" of the privilege of conducting business in North Carolina.

The Court will now address Defendants' arguments in their memoranda and explain why these arguments are unavailing.

Defendants note that MCC is not a party to this action and suggest that their activities in North Carolina as employees of MCC and "regarding MCC business" should not count in the

-6-

Court's analysis of whether it has jurisdiction. (Doc. No. 12 at 3, 7; Doc. No. 13 at 3, 7). Defendants do not appear to cite legal authority in defense of this proposition. However, they appear to be invoking a version of the fiduciary shield doctrine, under which "the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." See, e.g., Columbia Briargate Co. v. First Nat. Bank of Dallas, 713 F.2d 1052, 1055–57 (4th Cir. 1983). However, the Fourth Circuit suggested that this doctrine arises out of the statutory construction of certain state long-arm statutes and does not apply in cases where, as here, the long-arm statue permits jurisdiction to the maximum extent permitted by the Due Process Clause. Id. at 1057. In such cases, the Fourth Circuit has adopted a rule distinguishing between cases where the sole asserted basis for a court's jurisdiction is a defendant's status as an officer or employee of a company, a connection "too tenuous to support jurisdiction," and cases where a plaintiff's conduct occurred in the forum state. Id. at 1064–65. In the latter cases, the Court held that "it is unimportant … whether [the defendant] was acting at the time in his corporate or personal role." Id. While the Fourth Circuit in Columbia Briargate was addressing a case involving an alleged tort and personal service of process, the Court finds that the general principles from that decision are applicable here as well.[1]

---

[1] A similar case from the First Circuit notes that "[t]he general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation" but also that officers can be liable in "instances of direct personal participation, as where the defendant was the 'guiding spirit' behind the wrongful conduct or the 'central figure' in the challenged corporate activity." Escude Cruz v. Ortho. Pharm. Corp., 619 F.2d 902, 906–07 (1st Cir. 1980) (internal refs omitted). In this case, it appears that Defendants were directly personally involved to the point of being "guiding spirits" or "central figures" and, therefore, the Court would have jurisdiction under this approach as well.

Therefore, the Court agrees that the mere fact that Defendants are officers of a North Carolina corporation is insufficient to establish the necessary "minimum contacts" for it to exercise jurisdiction. But Plaintiff's assertion of jurisdiction is not based on Defendants' status as employees or offices of MCC. Rather, it is based on Defendants' actions targeted at and within North Carolina. For purposes of these actions, the Court finds that it is unimportant whether Defendants were acting in their corporate or personal roles.

Defendants did far more than merely serve as officers of MCC. First, Defendants' activities prior to their becoming officers of MCC—contacting the business broker, visiting North Carolina, and executing a substantial complicated and ongoing financial transaction with a North Carolina resident over ownership of a company based in North Carolina—were likely sufficient to establish the Court's jurisdiction on their own. Second, Defendants were not passive members of MCC's board; rather, they appear to have played a significant role in managing MCC and negotiated important banking and accounting relationships on MCC's behalf. These activities were directed at, and in some instances undertaken within, North Carolina and are not shielded from the Court's jurisdiction by the corporate form. Therefore, Defendants' argument that the corporate form shields them from the Court's jurisdiction is unavailing.

Defendants also argue that their activities conducted by phone or email do not subject themselves to the Court's jurisdiction. (Doc. No. 12 at 6; Doc. No. 13 at 6). The Court agrees that the mere fact of communicating with the forum state using phone or email is not sufficient to establish "minimum contacts" with the forum state. But the critical question is not <u>how</u> Defendants were communicating with the forum but rather <u>what</u> they were communicating. Defendants were more than pen pals with North Carolina residents. Defendants' communications

appear to have involved: contacting a North Carolina business broker; negotiating an acquisition of a North Carolina business; managing that North Carolina business; and conducting significant business transactions with other North Carolina businesses for services such as banking and accounting. The fact that many of these activities were undertaken through phone or email does not insulate them from the Court's jurisdiction. Furthermore, Defendants appear to have conducted substantial activities in person, including due diligence, their multiday "kickoff" meeting, and a mediation of a dispute involving their transaction. These activities alone appear to be sufficient to establish the Court's jurisdiction.

Defendants also argue that the Court does not have jurisdiction because they "never entered into a cont[r]act in North Carolina," and "never agreed to submit themselves to jurisdiction of [North Carolina]." (Doc No. 12 at 6–7; Doc. No. 13 at 7). In addition, Defendants assert that the related promissory notes and the Settlement Agreement from the parties' previous dispute were executed in Indiana and Illinois. (Id.). These arguments are also unavailing. Defendants do not need to explicitly enter a contract within North Carolina or explicitly agree to submit themselves to the jurisdiction of North Carolina courts for this Court to have jurisdiction. It is sufficient that they purposefully availed themselves of North Carolina law by targeting their activities at this forum.

Additionally, Defendants argue that "the Share Purchase Agreement and Shareholder Agreement … are governed by Indiana law." (Id.). Defendants cite to the "Governing Law" provisions of these contracts, which Plaintiff filed as exhibits along with the Complaint. (Doc. Nos. 1-5 and 1-6). But these provisions are clearly choice-of-law provisions, not choice-of-forum

-9-

Case 1:21-cv-00245-MOC-WCM   Document 16   Filed 01/27/22   Page 9 of 10

provisions. Nothing in the provisions specifies that only Indiana courts can hear disputes related to these agreements, nor bars North Carolina courts from hearing such disputes. (Id.).

In sum, for the reasons stated herein, the Court finds that Plaintiff met his burden of showing that this Court may assert personal jurisdiction over Defendants. Thus, the Court will deny the motions to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motions to Dismiss (Doc. Nos. 5, 8) are **DENIED**.

Signed: January 27, 2022

Max O. Cogburn Jr
United States District Judge